Kimberly Dawn HARMAN and Arthur Daniel Harman, Plaintiffs/Appellees,

v.

MOORE'S QUALITY SNACK FOODS, INC., Defendant/Appellant.

Court of Appeals of Tennessee, Western Section, at Knoxville.

March 20, 1991.

Application for Permission to Appeal Denied by Supreme Court July 29, 1991.

William K. Rogers of Blankenship & Rogers, Kingsport, for plaintiffs/appellees.

Frank Winston and Jack W. Hyder, Jr. of Caldwell, Johnson, Winston & Massengill, Bristol, for defendant/appellant.

TOMLIN, Presiding Judge (Western Section).

Kimberly Dawn Harman and her husband (hereafter "plaintiff" or "plaintiffs" [1]) brought this action in the Chancery Court for Sullivan County against Moore's Quality Snack Foods, Inc., a Virginia corporation qualified to do business in Tennessee, (hereafter "defendant"). Their complaint alleged that defendant by its unlawful actions had discriminated against plaintiff in violation of the provisions of T.C.A. § 4–21–101, *et seq.*, known as the Tennessee Human Rights Act ("THRA"). They further alleged that while she was employed by defendant, plaintiff was continuously sexually harassed by her immediate supervisor. It further stated that the conduct of defendant amounted to outrageous conduct and the intentional infliction of emotional distress. The suit was brought pursuant to the Federal Civil Rights Acts as well as the THRA. Plaintiffs sought punitive damages and plaintiff husband sought damages for loss of consortium.

Defendant filed a Motion to Dismiss and/or for Summary Judgment as to all plaintiffs' claims. Those claims with which we are not concerned on appeal were disposed of by the chancellor's sustaining defendant's Motion for Summary Judgment and/or Motion to Dismiss. The principal defense with which this Court is concerned on appeal is the contention of defendant that plaintiffs' remaining claims are barred by the exclusive remedy provision of the Tennessee Worker's Compensation Act ("TWCA"), codified as T.C.A. § 50–6–108.

■ The chancellor held that with the passage of the THRA, the exclusive remedy provision of the TWCA was impliedly repealed as to any rights and remedies a party might have under the THRA, and that T.C.A. § 50–6–108 did not bar any claim of plaintiffs under the THRA or any element of damages thereunder. The only issue presented by this appeal is whether or not the chancellor erred in holding that the exclusive remedy provision of TWCA did not bar any claim of plaintiffs under the THRA, or any element of damages claimed under that Act. We hold that the chancellor reached the right result, but for the wrong reason.

Inasmuch as this case comes to us on summary judgment, we must view the record in the light most favorable to the plaintiffs. *Taylor v. Nashville Banner Publishing Co.*, 573 S.W.2d 476 (Tenn.App. 1978). Plaintiff began working for defendant on or about December 29, 1986. She contends that from that time until shortly before her resignation on or about December 12, 1988, she had been continually subjected to sexual harassment by her supervisor, Jerrell Gilreath, regional sales manager for defendant. Plaintiff contends that Gilreath made repeated sexual innuendos to her; used vulgar and offensive language toward her; propositioned her; repeatedly described his extra-marital sexual conduct with other women; made offensive comments regarding a hysterectomy she was to undergo; and otherwise interfered in her personal and private life.

The complaint alleged that in late August, 1988, plaintiff reported this harassment to Gilreath's immediate supervisor, the zone sales manager, who in turn reported it to his supervisor. The complaint further alleged that the complaints were never acted upon by her superiors, and that the harassment continued, with the most recent occurrence taking place on or about October 14, 1988.

It was further alleged that plaintiff did nothing to incite or encourage the harassment, which was based upon her sex, and affected the terms, conditions, and privileges of her employment, creating an abusive working environment. As noted, it was alleged that defendant took no remedial action after being notified of the harassment.

Plaintiff left defendant's employment in mid-October, 1988 to undergo female surgery. In December, 1988, she resigned

---

**1.** "Plaintiff" will refer to Kimberly Dawn Harman, the former employee.

because she did not want to return to work under circumstances that would place her in contact with her former supervisor, Gilreath.

Following a hearing on defendant's Motion to Dismiss and/or Summary Judgment, which was supported by Answers to Interrogatories submitted earlier to plaintiff, the chancellor filed a Memorandum Opinion. He held that the parties' claims of intentional infliction of mental distress, outrageous conduct, common-law assault and personal injury, were barred by the exclusive remedy provision of the TWCA. The court further held that plaintiffs were not entitled to proceed under any of the Federal Civil Rights Acts to which they referred in their complaint. No appeal was taken from this ruling.

The chancellor then stated:

Relying on *Taff v. Media. General Broadcasting Services, Inc.*, 11 TAM 52–1 (Tenn.App.W.S.1986), the defendant contends the plaintiffs' claims under the Tennessee Human Rights Act, *TCA* § 4–21–101 *et seq.*, are barred by the exclusive remedy provision of the Tennessee Workers Compensation Law, *TCA* § 50–6–108. The Court, however, believes there is an irreconcilable inconsistency between the holding of *Taff* and *TCA* § 50–6–108, and therefore, declines to follow *Taff.*

In *Taff,* the Court of Appeals reconciles the Workers Compensation exclusive remedy statute (*TCA* § 50–6–108) and the Tennessee Human Rights Act (*TCA* § 4–21–101 *et seq.*) by finding the exclusive remedy statute only bars "personal injury" type damages. The plaintiff contends that this language from *Taff* is explained by an Opinion of the Attorney General (88–12) rendered January 12, 1988, in which the Attorney General opines that damages for "humiliation and embarrassment, costs and attorney's fees" and "other forms of mental anguish" are not excluded. This Court respectfully disagrees with the Court of Appeals, Western Section, and the Attorney General. First, humiliation, embarrassment and other forms of mental an-

guish have traditionally been included in damages for personal injury, and thus, under the *Taff* decision, only attorney fees would remain as damages for a plaintiff. Second, and more important[ly], *TCA* § 50–6–108 provides in part, "... shall exclude all other *rights* and *remedies* of such employee...." Thus, the exclusive remedy statute does not speak as to *damages* but as to *"rights and remedies"*, or in other words, causes of action. Thus, this Court finds *TCA* § 50–6–108, (Workers Compensation exclusive remedy statute), either completely bars an employee's rights under the Tennessee Human Rights Act, or it bars none.

When passed in 1978, the Tennessee Legislature set forth the purpose and intent of the Tennessee Human Rights Act in *TCA* § 4–21–101. It would defeat the intent and purpose of the Act to apply the *Taff* decision reasoning. For instance, one of the major remedies of the act under *TCA* § 4–21–306, is "back-pay" for the employee. Under the *Taff* decision, this would be limited to two-thirds of back pay under the Workers Compensation law. Therefore, this Court finds that by passage of the Tennessee Human Rights Act in 1978, the Tennessee Legislature impliedly repealed *TCA* § 50–6–108 as to any rights and remedies under the Tennessee Human Rights Act, *TCA* § 4–21–101 *et seq.*

It is the resulting decision of the Court that *TCA* § 50–6–108 does not bar any claim of the plaintiffs under the Tennessee Human Rights Act or any element of damages thereunder. To this extent the Motion of the defendant will be denied.

This Court is of the opinion that the chancellor was in error in his "all or none" ruling, and more specifically, in holding that the THRA implicitly repealed T.C.A. § 50–6–108 as to any rights and remedies under the THRA, at the same time drawing the resulting conclusion that T.C.A. § 50–6–108 does not bar any claim of plaintiffs under the THRA or any element of damages thereunder. In considering *Taff* and the subsequent case of *Gifford v. Premier Mfg. Corp.*, an unreported opinion of this

Court filed August 1, 1989 in which we adopted the holding of *Taff*, we must do so in light of recent decisions and statutory enactment.

First, we must review the "actual damages" question as presented by the provisions of T.C.A. § 4–21–311, which provide in substance that any person deemed to have a claim under the provisions of this chapter has the right to file a civil action in chancery court to enjoin further violations "and to recover the actual damages sustained by him or her." In *Taff* we concluded that "actual damages" were synonymous with "compensatory damages." In a subsequent opinion styled *Belcher v. Sears, Roebuck And Co.*, 686 F.Supp. 671 (M.D.Tenn.1988), following an analysis of the various Federal Civil Rights Acts and the Age Discrimination and Employment Act, that Court concluded that the term "actual damages" in the THRA did not include compensatory damages for injuries, including emotional injuries such as serious embarrassment and humiliation.

The General Assembly of this state, by an amendment to T.C.A. § 4–21–311, effective May 25, 1989, essentially abrogated the rationale of the *Belcher* court by adding the following language to that Section: "In addition to the remedies set forth in this Section, all remedies described in § 4–21–306 shall be available in any such lawsuit." This statute, being remedial in nature, thus would be applicable to the case at bar. The distinction set forth in *Belcher* was thus rendered moot.

In addition, our opinion in *Taff* merits further examination in the light of recent case law development in other jurisdictions. This examination not only strengthens but also clarifies our conclusion that the chancellor was in error in his "all or none" decision.

One of the principal cases upon which this court relied in *Taff* was that of *Slayton v. Michigan Host, Inc.*, 332 N.W.2d 498 (Mich.App.1983). Slayton, a waitress employed by defendant, alleged gender discrimination and harassment, asserting among other things that defendant's uniform requirement of high heels and a short

skirt was an intentional infliction of emotional distress upon her. Defendant filed a motion for summary judgment alleging that plaintiff's exclusive remedy was to seek compensation under the Michigan Workers' Compensation Act. The motion was granted.

In reversing the trial court and remanding the case for trial, the Michigan Court of Appeals stated:

We hold that a victim of discrimination may bring a civil suit to recover for damages for any humiliation, embarrassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination injury. Such claims are not barred by the exclusive remedy clause of the Worker's Disability Compensation Act because they are independent of any disability which might be compensable under the act. These types of injuries are the kind that the Elliott–Larsen Civil Rights Act was designed to protect against and to hold otherwise would undercut the legislative scheme to remedy discriminatory wrongs.

*Id.* at 500.

Before *Slayton* could be tried on the merits, the Michigan Supreme Court had occasion to consider the question of whether the exclusive remedy provision of the Worker's Compensation Act would bar an action seeking recovery for physical, mental or emotional injury resulting from an employer's violation of the Michigan Civil Rights Act. This occurred in *Boscaglia v. Michigan Bell Telephone Co.*, 420 Mich. 308, 362 N.W.2d 642 (1984). Boscaglia, an employee of defendant, refused to accept a lateral transfer and was subsequently demoted. She alleged that her demotion was a result of sex discrimination. Following her demotion as a result of some employment problems, plaintiff had a nervous breakdown which required psychiatric treatment. She did not return to work.

She subsequently filed a suit against Michigan Bell and her supervisors, alleging violation of the Michigan Civil Rights Act. During the pendency of this action, plaintiff filed a claim for Worker's Compensation benefits, which were awarded to her in

accordance with her disability. The trial court granted defendant's motion for summary judgment, holding that plaintiff's damage claims for emotional injury and incidental future wage loss were barred by the Worker's Compensation exclusive remedy provision. Following Michigan appellate procedure, the Supreme Court granted plaintiff's application for leave to appeal after the Court of Appeals had denied it.

In holding that the exclusive remedy provision of the Michigan Worker's Compensation Act did not bar an employment discrimination suit seeking recovery for physical, mental or emotional injuries, the Michigan Supreme Court noted:

> The evils at which the civil rights acts are aimed are different from those at which the workers' compensation act is directed. The workers' compensation act guards against the victims of industrial injuries being "turned away empty handed" and "unrecompensed" as a result of common-law tort doctrines such as contributory negligence and the fellow-servant rule. *Crilly v. Ballou*, 353 Mich. 303, 307–308, 91 N.W.2d 493 (1958). The civil rights acts are addressed to "the prejudices and biases" one race, sex or religion bears against another. *Freeman v. Kelvinator, Inc.*, 469 F.Supp. 999, 1000 (E.D.Mich.,1979).

*Id.* 362 N.W.2d at 645.

## I. THE IMPLICIT REPEAL OF T.C.A. § 50–6–108.

 In finding that the General Assembly impliedly repealed T.C.A. § 50–6–108 by passage of the THRA as to any rights and remedies under that Act, the chancellor failed to appreciate that these two acts were aimed at totally different kinds of claims. In addition, he failed to observe certain basic rules of statutory construction. First of all, repeal by implication is not favored under Tennessee law and will only be declared where there is an irreconcilable conflict between statutes. *Gillis v. Clark Equipment Co.*, 579 S.W.2d 869 (Tenn.App.1978). The primary objective of statutory construction is to ascertain and give effect to the legislative intent. In ascertaining this intent we look to

the general purpose to be accomplished by the legislation. *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn.1975). Legislative intent or purpose is to be determined primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of that language. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn.1977). The court must give effect to every word, phrase, clause and sentence of an act in order to achieve the legislature's intent, and it must construe a statute so that no section will destroy another. *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn.App.1983). Furthermore, a statute is to be construed with reference to pre-existing law and it does not change pre-existing law further than it expressly declares or necessarily implies. *In re Estates of Deskins*, 214 Tenn. 608, 381 S.W.2d 921 (1964).

An examination of the two acts in question and their respective purposes reveals that they are designed to protect the employees of this state in two entirely different ways. The purpose of the THRA is set forth in T.C.A. § 4–21–101(a), which reads in pertinent part as follows:

> **Purpose and intent.**—(a) It is the purpose and intent of the general assembly by this chapter:
>
> . . . . .
>
> (2) To assure that Tennessee has appropriate legislation prohibiting discrimination in employment . . .
>
> (3) To safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, or national origin in connection with employment . . .
>
> (4) To protect their interest in personal dignity and freedom from humiliation;

T.C.A. § 4–21–101(a) (Supp.1990).

In addition to recovering actual damages sustained by a person under the THRA, the claimant therein is entitled to "payment . . . of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and costs, includ-

ing a reasonable attorney's fee." T.C.A. § 4–21–306(a)(8) (Supp.1990).

As for the purpose of our Worker's Compensation Law, our courts have spoken to this more than once. Its purpose has been declared to be to provide compensation for loss of earning power or capacity sustained by workers through injuries in industry. *Mathis v. J.L. Forrest & Sons*, 188 Tenn. 128, 216 S.W.2d 967 (1949); to compensate for disability of the employee occurring under certain specified conditions while such employee is working for the employer. *Norton v. Standard Coosa–Thatcher Co.*, 203 Tenn. 649, 315 S.W.2d 245 (1958); to increase the rights of employees to be compensated for injuries growing out of their employment. *W.S. Dickey Mfg. Co. v. Moore*, 208 Tenn. 576, 347 S.W.2d 493 (1961).

Our Worker's Compensation Law generally is the sole tort remedy available to a worker who is injured in a fashion that falls within the broad scope of the Workers' Compensation statute. Section 50–6–108 states in part that "The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee...." This statute clearly expresses a legislative intent that any potential liability of the employer arising from "injury or death" is abolished in favor of the remedy provided by worker's compensation.

The term "injury" is defined in § 50–6–102 of the act itself, in Section 50–6–102, which reads as follows:

> (4) "injury" and "personal injury" mean an injury by accident arising out of and in the course of employment which causes either disablement or death of the employee and shall include occupational diseases arising out of and in the course of employment which cause either disablement or death of the employee.

In keeping with the liberal construction accorded the Worker's Compensation statute, the term "accident arising out of and in the course of employment" has been construed by our courts beyond the limited language contained in the statute.

The allegations in the complaint in the case at bar clearly reflect a case of employment discrimination that can also be labeled "sexual discrimination" or "sexual harassment." At any rate, it is clearly the type of conduct at which the THRA is aimed. Since our earlier opinion in *Taff*, several jurisdictions have addressed this potential conflict in legislation in a manner similar to our approach in *Taff* in what we deem to be the appropriate approach.

A case reflecting a refinement of the *Taff* approach is that of *Reese v. Sears, Roebuck & Co*, 107 Wash.2d 563, 731 P.2d 497 (1987). Reese, an employee of defendant, suffered a work-related foot injury that prompted a worker's compensation claim. His foot injury prevented him from performing heavy work. Inasmuch as he could not return to work at full capacity, defendant terminated his employment. Reese then filed suit alleging disability discrimination under the Washington Anti-Discrimination Law.

The trial court granted defendant's motion for summary judgment on the grounds that the exclusive remedy provision of the Washington Worker's Compensation Act precluded the discrimination claim. In reversing the action, the appellate court noted the distinction between the purposes of the two acts:

> The Law Against Discrimination seeks to remedy an evil that "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. In contrast, the IIA only provides the individual employee with a remedy for harm resulting from physical injuries suffered in the workplace, thus indirectly protecting the state's interest in its industries. *See* RCW 51.04.010. Unlike the IIA, the Law Against Discrimination seeks to remedy nonphysical injuries, similar to dignitary torts, *see Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 194 P. 813 (1921), that

have far-reaching social, political, and economic implications.

*Id.* 731 P.2d at 501.

The Law Against Discrimination is not similarly rooted in tort law. Rather, it grows out of the fundamental principle that every citizen deserves equal treatment without regard to race, color, religion, sex, or handicap. *See Freeman v. Kelvinator, Inc.,* 469 F.Supp. 999, 1033 (E.D.Mich.1979). Its origins and purposes, as well as the facts giving rise to a claim under it, differ markedly from those of the IIA.

Harmonizing legislative acts is a traditional responsibility of this court. Even if an apparent conflict existed between the IIA and the Law Against Discrimination, we would be obliged to reconcile that conflict and give effect to both statutory schemes, if this could be achieved without distorting the statutory language. *See Tommy P. v. Board of Cy. Comm'rs,* 97 Wash.2d 385, 391–92, 645 P.2d 697 (1982); *State v. Fagalde,* 85 Wash.2d 730, 736–37, 539 P.2d 86 (1975). Here, however, there is no conflict between the two statutory schemes. Under the IIA, appellant employees sought recovery for their out of pocket costs (lost wages, medical bills, disability allowance) attributed to a specifically defined physical injury, *see* RCW 51.08.100, or a disease, *see* RCW 51.08.140, that arose out of their employment.

*Id.* 731 P.2d at 502.

Inasmuch as there is no conflict, we need not choose *between* giving full effect to either the Law Against Discrimination or the IIA exclusive remedy provision. The Legislature's intent is upheld by protecting the integrity of both statutory schemes. No one is excluded from the protection of the Law Against Discrimination. Under the IIA, employees will continue to receive the sure but limited remedy for their workplace physical injuries, and employers will remain protected from all court actions arising out of those injuries.

This conclusion agrees with the only other court to address this issue. In a consolidated case, *Boscaglia v. Michigan Bell Tel. Co.,* 420 Mich. 308, 362 N.W.2d 642 (1984), the Michigan Supreme Court held that the Civil Rights Act and the Workers' Compensation Act were directed to different ends; the former to protect against " 'the prejudices and biases' one race, sex, or religion bears against another," the latter to protect victims of industrial injuries who had been deprived of other remedies because of common-law doctrines such as contributory negligence and the fellow servant rule. *Boscaglia,* 420 Mich. at 315, 362 N.W.2d 642. Each statutory scheme addressed separate problems without mentioning the other scheme. Rather than allowing one statutory scheme to frustrate the other's purposes and objectives, the unanimous court held that the exclusive remedy provision in the workers' compensation law did not bar the plaintiffs' actions for discrimination. *Boscaglia,* 420 Mich. at 316, 362 N.W.2d 642.

In sum, we hold that appellant employees' discrimination actions are not barred by the IIA exclusive remedy provision. Appellants claim to have suffered two separate injuries—a workplace physical injury and a subsequent injury arising from the employers' alleged handicap discrimination. Because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (an IIA claim is indifferent to employer fault, a discrimination claim requires such fault), the two injuries cannot be "the same injury." Since the Legislature intended the IIA and the Law Against Discrimination to address the two separate injuries alleged by the appellants, no conflict exists between the two statutes in question.

*Id.* 731 P.2d at 503.

In *Byrd v. Richardson–Greenshields Securities, Inc,* 552 So.2d 1099 (Fla.1989), the plaintiffs, all female employees, brought claims for assault and battery, intentional infliction of emotional distress and negligent hiring and retention of employees based upon incidents in which male employees of defendant repeatedly touched them

and made verbal sexual advances toward them during working hours. Plaintiffs claimed that this resulted in emotional anguish and stress. The trial court dismissed the complaint on the ground that the Worker's Compensation statute provided the exclusive remedy for plaintiffs. In *Byrd,* the Florida Supreme Court stated in part:

We acknowledge and reaffirm the strong policies regarding workers' compensation that form the foundation of the decisions discussed above. As the Court often has noted, our obligation is to honor the obvious legislative intent and policy behind an enactment, even where that intent requires an interpretation that exceeds the literal language of the statute. *E.g., State v. Webb,* 398 So.2d 820 (Fla.1981).

In this context, we cannot find that acts constituting sexual harassment were ever meant to fall under workers' compensation. Moreover, we have an equal obligation to honor the intent and policy of other enactments and, accordingly, may not apply the exclusivity rule in a manner that effectively abrogates the policies of other law. In this instance, we find that the First District in *Brown* [*v. Winn–Dixie Montgomery, Inc.,* 469 So.2d 155 (Fla. 1st DCA 1985)] and *Schwartz* [*v. Zippy Mart, Inc.,* 470 So.2d 720 (Fla. 1st DCA 1985)], and the Second District in the instant case, have ignored an equally important expression of public policy emanating from both federal and state enactments.

There can be no doubt at this point in time that both the state of Florida and the federal government have committed themselves strongly to outlawing and eliminating sexual discrimination in the workplace, including the related evil of sexual harassment. The statutes, case law, and administrative regulations uniformly and without exception condemn sexual harassment in the strongest possible terms. We find that the present case strongly implicates these sexual harassment policies and, accordingly, may not be decided by a blind adherence to the exclusivity rule of the workers' compensation statute alone. Our clear obligation is to construe both the workers' compensation statute and the enactments dealing with sexual harassment so that the policies of both are preserved to the greatest extent possible. *Wakulla County v. Davis,* 395 So.2d 540, 542 (Fla. 1981).

Thus, we must examine the scope of the public policies regarding sexual harassment. The primary source of these policies, both historically and under the supremacy clause of the United States Constitution, article VI, clause 2, is a portion of Title VII of the Civil Rights Act of 1964, which provides in pertinent part:

It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....

42 U.S.C. § 2000e–2(a)(1) (1982). This federal provision was the model of Florida's Human Rights Act of 1977, sections 760.01–.10, Florida Statutes (1987), which uses virtually the same language in prohibiting the same practices. The Human Rights Act provides in pertinent part:

"It is an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...."

§ 760.10(1)(a), Fla.Stat. (1987).

In interpreting Title VII, the federal courts have stated unequivocally that any sort of workplace sexual harassment is unlawful under Title VII and contrary to public policy. So strong is this policy that the United States Supreme Court has stated that,

[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex.... The phrase "terms, conditions, or privileges of employment" evinces a congressional intent " 'to strike at the entire spectrum of

disparate treatment of men and women' " in employment.

*Id.*, 552 So.2d at 1102.

In light of this overwhelming public policy, we cannot say that the exclusivity rule of the workers' compensation statute should exist to shield an employer from all tort liability based on incidents of sexual harassment.

. . . .

We find this conclusion harmonizes with the policies and scope of workers' compensation. As often has been noted, workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights. To the extent these injuries are separable, we believe that they both should be, and can be, enforced separately.

*Id.* at 1103–04.

[A] two-part test determines what types of injuries are compensable only under worker's compensation. First, the injury must "arise out of" employment in the sense that it is caused by a risk inherent in the nature of the work in question. It is immaterial whether the injury is caused by an intentional or unintentional act, so long as that act arose out of this type of risk. . . . Second, the injury must occur "in the course of" employment. This prong of the test . . . requires that the injury must have substantially originated from the "time and space" of work, resulting in an injury directly linked to the work environment or work-related activities. . . . We conclude that, as a matter of public policy, sexual harassment should not and cannot be recognized as a "risk" inherent in any work environment. Accordingly, it does not meet the first prong of the test.

*Id.* at 1104, n. 7. In addition, the peaceful and practical co-existence of a state worker's compensation act and state civil rights act closely akin to our own was recognized and upheld in the cases of *Jones v. Los Angeles Community College District*, 198 Cal.App.3d 794, 244 Cal.Rptr. 37 (2d Dist. 1988), and *Meninga v. Raley's, Inc.*, 216 Cal.App.3d 79, 264 Cal.Rptr. 319 (5th Dist. 1989).

There are too many variables in this issue to lay down a hard and fast mechanical formula into which trial courts may plug certain facts and come out with a specific answer. The trial courts of this state are going to be called upon from time to time to determine whether an employee's claim is based upon real discrimination or arises from employer misconduct that is a normal part of the employment relationship.

This case comes to us on summary judgment. In ruling on a motion for summary judgment, this Court, like the trial court, must review the matter in a light most favorable to the non-moving party and draw all legitimate conclusions of fact in his favor. *Daniels v. White Consolidated Industries, Inc.*, 692 S.W.2d 422 (Tenn. App.1985).

In the case under consideration, the chancellor overruled defendant's motion for summary judgment as it pertained to plaintiff's claims under the THRA being barred by the exclusive remedy provision of the TWCA. We are of the opinion that the chancellor reached the right result but for the wrong reasons.

The allegations in the complaint state a cause of action for sexual harassment. It will be the responsibility of the trial court to determine the validity of these claims and into which category they fall, if any, in the light of the principles we have set forth in this opinion.

That portion of the decree of the trial court appealed from is affirmed. This cause is remanded to the Chancery Court of Sullivan County for further proceedings not inconsistent with this opinion. Costs on appeal are taxed one-half to plaintiff

and one-half to defendant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.