# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2001 Session

## JERRY MOORE, ET AL. v. NASHVILLE ELECTRIC POWER BOARD (NES)

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 99-1042-I    The Honorable Irvin H. Kilcrease, Jr., Chancellor**

---

### No. M2000-03186-COA-R3-CV - Filed October 2, 2001

---

Three civil service employees sued Nashville Electric Service and the individual members of the civil service board primarily for violation of the age provision of the Tennessee Human Rights Act resulting in their denial of promotions. The trial court granted summary judgment to defendant, and plaintiffs appeal. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and ALAN E. HIGHERS, J., joined.

Thomas E. Stewart; Thurman T. McLean, Jr., Madison, For Appellants Jerry Moore, John Bruce, and Charlie Spears

Parks T. Chastain, Nashville, For Appellees

### OPINION

Plaintiffs, Jerry Moore, John Bruce, and Charlie Spears (collectively "Plaintiffs") sued the defendants, Metropolitan Government of Nashville and Davidson County, acting by and through the Nashville Electric Service Power Board ("NES"), and Charles Cook, Sam Howard, Tom Jackson, Betty Nixon, and William McDonald, individually, and as members of the National Electric Service (NES) Civil Service and Pension Board, and Matthew P. Cordero, Jimmy Darylripple, Don Kohanski, Kate Tallmadge, and Gary Murray, individually, for violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 et seq., by discriminating against them because of their age and thereby denying them promotions.

Plaintiffs had been employees of Defendant Nashville Electric Service Power Board ("NES") for approximately 35, 33, and 35 years, respectively, at the time this action was filed.[1] In these actions, consolidated on appeal[2], Plaintiffs allege that NES discriminated against them because of their age. As NES employees, Plaintiffs are subject to the civil service rules regarding promotions and suspensions.

NES is governed entirely by the Nashville and Davidson County Charter (the "Charter") which, in turn, created the Electric Employees Civil Service and Pension Board (the "Board"). The Charter gives the Board the authority to promulgate rules relating to NES employees, including rules regarding discharge, compensation, and promotion. Under a revised certification process, the Board rates NES employees by seniority and service, allocating "points" based upon certain criteria, with a maximum of 81 points available. Under the service rating system, employees can obtain points based upon their performance evaluations, with a maximum of 30 points awarded for "outstanding" performance (a score of 0 points is given for "marginal" or "unacceptable" performance). In addition, employees earn 1 point per year of employment for seniority, up to a maximum of 30 points. An employee may also earn up to a total of 21 points for additional related experience, education, training, licenses and a good safety record.

From the record, it appears the point system is used to rank employees who wish to be considered for promotions. Depending upon the number of employees eligible for a particular promotion, the Secretary of the Board submits between 3 and 10 names for promotion consideration. After the Secretary submits the names, the supervisor making the final decision as to promotion takes into consideration the employee's ranking on the list, as well as the employee's personnel record.

On April 12, 1999, Mr. Moore filed a complaint against defendants, alleging, *inter alia*, hostile work environment, age discrimination, retaliation, harassment, and denial of due process and employment property rights. Specifically, Mr. Moore alleges that he was passed over for promotion three times: in March of 1995, in July of 1998, and in February of 1999. Mr. Moore also alleges that he was wrongfully suspended in September of 1998.

On February 7, 2000, Defendants filed a Motion for Summary Judgment on all claims Mr. Moore made in his Complaint. In its Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment dated October 30, 2000, the trial court found that Mr. Moore had failed to exhaust his administrative remedies prior to seeking judicial relief and that defendants were entitled to judgment as a matter of law "on all issues raised by the Motion for Summary Judgment." Mr. Moore appeals from this Order.

---

[1] The record indicates that Mr. Moore did not work for NES during the period of December, 1972, through January, 1974 but that, other than this brief hiatus, Mr. Moore has been an NES employee since 1964.

[2] Although only Mr. Moore submitted an appellate brief in this matter, Mr. Moore filed an individual notice of appeal to this court, and Mr. Bruce and Mr. Spears filed a joint notice of appeal.

Similarly, on August 17, 1999, Plaintiffs Bruce and Spears filed a separate action against Defendants, also alleging hostile work environment, age discrimination, retaliation, harassment, and denial of due process and employment property rights. Although the Bruce/Spears Complaint is unclear on this point, it appears both Mr. Bruce and Mr. Spears allege they were wrongfully passed over for the same promotions four times: in October of 1998; in December of 1998; in January of 1999; and in May of 1999.[3] In light of the trial court's ruling in the Moore matter, the parties agreed to waive oral argument on Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment, and allowed the trial court to rule based on the memoranda and materials submitted by the parties. On December 7, 2000, the trial court entered an Order, substantially similar to that in the Moore case, granting Defendants' Motion for Summary Judgment in the Bruce/Spears case. Plaintiffs Bruce and Spears appeal from this Order.

The issues on appeal are: (1) Whether a civil service employee must first exhaust his administrative remedies by following grievance procedures set out in the civil service rules before bringing an action under the Tennessee Human Rights Act; (2) Whether Plaintiffs failed to prove that discrimination was the reason they did not receive promotions and, in the case of Plaintiff Moore, that discrimination was the reason for his suspension; (3) Whether Plaintiff Moore's claims dating from 1995 and 1998 are barred by the applicable statute of limitations; (4) Whether individual NES employees and Board Members affirmatively aided and abetted discrimination by preventing Plaintiffs from taking remedial action; and (5) Whether the NES violated Plaintiffs' due process rights. We affirm the trial court's Orders, although for reasons different from those upon which the trial court relied.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

---

[3] The Complaint does not enumerate any of the incidents complained of by either Mr. Bruce or Mr. Spears, but Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment indicates that Plaintiffs were each denied promotion four (4) times.

***Id.*** at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***See Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

Exhaustion of Remedies

The first, and threshold issue in this case is whether an employee's civil service status requires him to first exhaust his administrative remedies under civil service rules before bringing a direct action in chancery or circuit court under the Tennessee Human Rights Act (the "THRA"). We hold that it does not.

The Tennessee Human Rights Act was enacted to "[s]afeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment." T.C.A. § 4-21-101(3) (1998). The Act applies to all Tennessee employers, including private employers with eight or more employees, as well as state and local government employers. ***See*** T.C.A. § 4-21-102(4). The THRA forces individuals filing under the Act to pursue either an administrative path and, if they wish, seek judicial review of the administrative decision, or file a direct action in circuit or chancery court. ***See*** T.C.A. 4-21-307; ***Hoge v. Roy H. Park Broadcasting of Tenn., Inc.***, 673 S.W.2d 157, 158 (Tenn. Ct. App. 1984).

The administrative path under the THRA involves review of discrimination claims by the Tennessee Human Rights Commission (the "Commission"). ***See*** T.C.A. § 4-21-302. If a THRA claimant follows the administrative path, he or she may only challenge the Commission's decision in court after the administrative proceedings have been concluded. ***See*** T.C.A. § 4-21-307(a); ***Puckett v. Tennessee Eastman Co.***, 889 F.2d 1481, 1485 (6th Cir. 1989). The administrative procedure available under the THRA is <u>not</u> the same administrative procedure Defendants claim Plaintiffs must first exhaust before bringing their THRA action.[4]

In this case, NES alleges that Plaintiffs were bound to exhaust their administrative remedies under civil service rules NES has adopted pursuant to the Nashville and Davidson County Charter. We disagree. While Plaintiffs were clearly entitled to pursue remedies under the civil service rules, the THRA provides them with another, independent right of redress for any perceived wrongs

---

[4]Defendants have argued that some of Plaintiff Moore's claims are barred because Mr. Moore instituted administrative proceedings under the civil service rules. In support of its position, NES cites the case of ***Puckett v. Tennessee Eastman Co.***, 889 F.2d 1481 (6th Cir. 1989). However, ***Puckett*** only addressed the issue of exhaustion of the administrative remedy available <u>under the THRA</u>. Since NES has cited no other cases in support of this position, we find this argument to be without merit.

committed by Defendants. The Act's protection is available to "all individuals" within the State of Tennessee. *See* T.C.A. § 4-21-101(3).

Nor do we find language of limitation in the Act which would lead us to believe civil service employees should be treated differently from other employees. Defendants have not brought our attention to any such language, instead citing several cases decided before the passage of the THRA, and an unpublished case, ***Haynes v. Knoxville Utilities Bd.***, No. 03A01-9209-CH-362, 1993 WL 104639 (Tenn. Ct. App. 1992), in which this Court held that a civil service employee was required to exhaust his remedies before seeking judicial redress for his employer's unfavorable employment action. *See id.* at *1.

Although, on its face, the ***Haynes*** case appears to apply to the case at bar, we believe it is both easily and clearly distinguishable. First, the two civil service employees who sought judicial relief voluntarily non-suited their age-discrimination claims and age-discrimination was not an issue before the Civil Service Merit Board, so the issue of application of the THRA to those claims was not before this Court. *Id.* at *3. Secondly, the ***Haynes*** court noted that the remaining claims, involving due process under the applicable civil service rules, were "personnel issues that fall squarely within the plaintiff's civil service protection." *Id.* The heart of Plaintiffs' claims in this case is that the NES discriminated against them because of their age. Such discrimination is not an issue which we see as inherently within the protection of the civil service.

As to cases decided before the passage of the THRA, we believe these cases are no longer applicable. The list of remedies the Act provides in T.C.A. § 4-21-306 is extensive.[5] This full

---

[5]That section provides:

§ 4-21-306. Remedies

    (a) Affirmative action ordered under this section may include, but it is not limited to:

    (1) Hiring, reinstatement or upgrading of employees with or without back pay. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable;

    (2) Admission or restoration of individuals to union membership, admission to, or participation in, a guidance program, apprenticeship, training program, on-the-job training program, or other occupational training or retraining program, and the utilization of objective criteria in the admission of individuals to such programs;

    (3) Admission of individuals to a place of public accommodation, resort or amusement;

    (4) The extension to all individuals of the full and equal enjoyment of the advantages, facilities, privileges and services of the respondent;

    (5) Reporting as to the manner of compliance;

    (6) Posting notices in conspicuous places in the respondent's place of business in the form prescribed by the commission and inclusion of such notices in advertising material;

    (7) Payment to the complainant of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and cost, including a reasonable attorney's fee;

    (8) Such other remedies as shall be necessary and proper to eliminate all the discrimination identified by the evidence submitted at the hearing or in the record; and

    (9) In cases involving discriminatory housing practices only, payment by the respondent of

(continued...)

measure of damages has been, and continues to be, one of the most important reasons courts have refused to bar actions under the THRA when an administrative procedure and remedy were available to a plaintiff alleging discrimination. For example, in ***Harmon v. Moore's Quality Snack Foods, Inc.***, 815 S.W.2d 519 (Tenn. Ct. App. 1991), ***appeal denied*** (July 29, 1991), this Court held that the exclusive remedy provision of the Tennessee Workers' Compensation Act (the "TWCA") did not bar a THRA claim or any damages under the Act. ***See id.*** at 520. The ***Harmon*** court based its reasoning in part upon a belief that the plaintiff's injuries would be more fully compensated under the Tennessee Human Rights Act. ***See id.*** at 521 (noting that back pay was limited to two-thirds of the employee's wages under the TWCA, whereas the THRA provided the employee with a full measure of back pay). Similarly, in 1999, the Tennessee Supreme Court noted that the THRA was designed to provide victims of discrimination with a "full recovery." ***Anderson v. Save-A-Lot, Ltd.***, 989 S.W. 2d 277, 289, n.10 (Tenn. 1999). While the full extent of Plaintiffs' remedies available under the civil service rules is unclear on this record, when viewed in the light most favorable to Plaintiffs, we cannot say the civil service remedies are more extensive or even coextensive with those provided in the THRA.

For these reasons, we hold that a civil service employee may bring an action under the THRA without first exhausting his remedies under civil service rules. Further, we hold that there is no requirement that, once an employee has chosen to institute administrative proceedings under the civil service rules, he must see those proceedings through to their conclusion before bringing an action under the THRA.

Failure to Promote Claims

This Court has construed the Tennessee Human Rights Act under the framework of the federal statutes upon which it was patterned, such as the Age Discrimination in Employment Act ("ADEA"). ***See Bruce v. Western Auto Supply Co.***, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984). Under the ADEA, as well as other federal anti-discrimination statutes, a plaintiff may assert claims

---

[5](…continued)

a civil penalty:

> (A) In an amount not exceeding ten thousand dollars ($ 10,000) if the respondent has not been adjudged to have committed any prior unlawful discriminatory housing practices;
>
> (B) In an amount not exceeding twenty-five thousand dollars ($25,000) if the respondent has been adjudged to have committed one (1) other unlawful discriminatory housing practice during the five-year period ending on the date of the filing of the complaint; or
>
> (C) In an amount not exceeding fifty thousand dollars ($50,000) if the respondent has been adjudged to have committed two (2) or more unlawful discriminatory housing practices during the seven-year period ending on the date of the filing of the complaint.
>
> If the acts constituting the discriminatory housing practice that is the object of the complaint are committed by the same natural person who has been previously adjudged to have committed acts constituting an unlawful discriminatory housing practice, then the civil penalties set forth in subdivisions (a)(9)(B) and (C) may be imposed without regard to the period of time within which any subsequent discriminatory housing practice occurred.
>
> (b) The commission may publish, or cause to be published, the names of persons who have been determined to have engaged in a discriminatory practice.

of "disparate treatment" or "disparate impact" discrimination. *See* 45C Am. Jur. 2d *Job Discrimination* § 2703 (1993). A "disparate treatment" case involves an employer who treats individuals from a protected group differently and less-favorably than other individuals. *See id.* A "disparate impact" case is one in which a facially-neutral employment policy, such as an applicant testing procedure or height and weight requirement, has the effect of treating individuals in the protected class less favorably. *See id.*

A disparate impact action alleging age discrimination is generally established by: (1) alleging systemic discrimination; and (2) presenting statistical evidence of discrimination. *See id.* In response to such evidence, the employer may directly challenge the plaintiff's proffered statistical evidence, or demonstrate that the employment policy being challenged arises out of a "business necessity." *See id.* No showing of discriminatory motivation is required for purposes of disparate impact theory. *See id.*

A disparate treatment claim, on the other hand, does require a showing of intent to discriminate. *See id.* Recognizing that direct evidence of discriminatory animus is often hard to produce, the United States Supreme Court adopted a four-part, burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which allows a discrimination plaintiff to prove motivation with indirect or circumstantial evidence. Although *McDonnell Douglas* dealt with race discrimination, in a case involving both the THRA and ADEA, the Sixth Circuit Court of Appeals applied the same analysis to age discrimination claims[6]:

> In evaluating age-discrimination claims, this court applies the four-step "McDonnell Douglas Test." Under this test, to establish a prima facie case of age discrimination, the plaintiff bears the initial burden to prove by a preponderance of the evidence that: (1) he was at least 40 years of age at the time of the alleged discrimination ("a member of a protected class"); (2) he was subjected to adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person.
>
> Once the plaintiff proves his prima facie case, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." . . . If the employer meets the burden of articulation, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason proffered by the employer was not its true reason but merely a pretext for discrimination.

---

[6]We note that, although the basic *McDonnell Douglas* framework applies to the case at bar, in the context of a suit alleging failure to promote based upon age discrimination, a plaintiff would have to show that the employee who received the promotion was younger than the plaintiff.

> A plaintiff can prove pretext "by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge."

*Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 29-30 (6th Cir. 1994) (citations omitted). Contrary to defendants' assertions in this case, an ADEA plaintiff is not required to show that the individual promoted was someone <u>outside</u> the protected class (i.e., less than 40 years of age), but only that the individual was <u>younger</u> than the plaintiff. *See id.*

Although a plaintiff may assert a claim under either disparate treatment, disparate impact, or both theories of discrimination, courts have held that it is unfair to allow a plaintiff to present a new theory on appeal. *See* 45C Am. Jur. 2d *Job Discrimination* § 2704. In the case at bar, Plaintiffs' do not indicate upon which theory they rely. However, given the Plaintiffs' and Defendants' reliance on the *McDonnell Douglas* framework cited above, we must assume they are alleging disparate treatment based upon age. It is under this framework that defendants have responded to Plaintiffs' allegations, and it is under this framework that we analyze each of Plaintiffs' claims of discrimination.

In his appellate brief, counsel for Mr. Moore argues that "the contention of the Appellees that there exists in the record legitimate non discriminatory reasons for the adverse job actions . . . is an issue of a material fact which is not appropriate for summary judgment." We take this to mean that when Defendants rebutted Plaintiffs' prima facie cases of discrimination under the *McDonnell Douglas* test cited above, a genuine issue of material fact was created which would preclude summary judgment in this case. This is a misinterpretation of the *McDonnell Douglas* burden-shifting analysis.

In order to survive summary judgment under the *McDonnell Douglas* analysis, a plaintiff must offer some evidence to prove that the employer's legitimate, non-discriminatory reasons are pretext for discrimination. *See Cooley*, 25 F.3d at 30. In a case applying the *McDonnell Douglas* test to both race and age discrimination claims, the Sixth Circuit Court of Appeals wrote:

> It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position: a mere "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby*, [477 U.S. 242, 247-48 (1986)]; *Street v. J.C. Bradford & Co.*, [886 F.2d 1472, 1479 (6th Cir. 1989)].

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).

<u>Mr. Moore's Claims</u>

Regarding Mr. Moore's 1995 failure to promote incident, NES has offered evidence in the form of an affidavit by Gary Murray, a supervisor in the department in which Mr. Moore works. Mr. Murray indicates that Mr. Moore was rated number 7 of 18 applicants for the job in question, but that the job was given to the number one candidate on the list.

To rebut NES's proffered, non-discriminatory reason for failing to promote him, Mr. Moore has offered his own deposition testimony and a copy of the administrative law judge's Findings of Fact and Conclusions of law in *McLaurine v. Nashville Electric Service*, Case No. 97G-6-93-15-M, Docket No. 97-002 (January 6, 1998), a case heard before the Electric Employees' Civil Service and Pension Board. Judge Russell's findings, dated January 6, 1998, indicate that the old NES policy regarding promotions failed to give adequate weight to seniority.

This evidence is insufficient to rebut NES' non-discriminatory explanation for several reasons. First, although Mr. Moore testified that he failed to receive the 1995 promotion because he had filed numerous grievances on the part of NES employees, none of the grievances had anything to do with age or any other type of discrimination. As we note below regarding the Plaintiffs' general claims of retaliation, only certain retaliatory conduct violates the THRA. Filing grievances which fall within the category of general employment issues is not protected conduct under the Act.

Secondly, the administrative law judge did not make a finding of discrimination, but rather determined that the Charter required "service ratings and seniority" to constitute the "principal factors" in employment decisions under the civil service rules. The judge found that the policy in effect at that time did not comply with the Charter's "principal factors" requirement. While the judge's findings might be relevant for purposes of a disparate impact claim, under disparate treatment theory, Mr. Moore would still need to show causation: that, but for the discriminatory policy, he would have been higher up on the list of candidates and would have received the promotion. *See generally Reed v. Alamo Rent-a-car, Inc.*, 4 S.W.3d 677, 684-85 (Tenn. Ct. App. 1999) (requiring proof of causation in action for retaliation discharge). *See also Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 426 (Tenn. Ct. App. 1992) . He has presented no evidence to this effect. For these reasons, we agree with the trial court that there is no genuine issue of material fact as to the 1995 failure to promote incident.

Similarly, the trial court properly dismissed Mr. Moore's 1998 failure to promote claim. Under the new evaluation policy the NES instituted after *McLaurine*, NES ranked Mr. Moore number 1 on the list of four candidates for promotion to Meter Service Foreman. NES presented evidence indicating that Mr. Moore did not get the promotion because he had been reprimanded in 1997 for violating the "mutual respect policy", had a long history of abusing sick days, had been counseled several times regarding his performance and the need for him to improve his quantity of acceptable work, and that he had been counseled regarding his need for improvement in the area of dependability.

In response, Mr. Moore testified in deposition that the candidate who received the promotion, Steve Tucker, should not have been promoted because he was younger, worked in another division,

and did not "know how the field work went on." Other than this conclusory statement, however, Mr. Moore has presented no evidence that Mr. Tucker was unqualified for the job. Neither has Mr. Moore presented evidence to contradict NES' proffered reasons for denying Mr. Moore the promotion. Mr. Moore also indicated that he believed Mr. Tucker got the promotion because Mr. Tucker's father used to work at NES, and because Mr. Tucker played on the company softball and golf teams. While this evidence may, if taken as true, show that NES engaged in political favoritism, it is irrelevant to proving a case of age discrimination.

The final failure to promote incident involving Mr. Moore occurred in 1999. Here, NES has presented evidence that Mr. Moore was ranked third on the promotions list. Mr. Murray's affidavit indicates that Max Ragsdale, who was ranked second on the list, received the promotion instead of Mr. Moore. In the affidavit, Mr. Murray explains that Mr. Moore's September 3, 1998 suspension for "conduct unbecoming of an NES employee" was a major factor in Mr. Moore's failure to be promoted.

Mr. Moore claims that, although Mr. Ragsdale had 30 years seniority, Mr. Moore had more than 30 years at that point in time and, therefore, should have received the promotion in question. However, Mr. Moore has failed to show that the few years' difference in seniority resulted in his failure to win the promotion. Mr. Moore also claims the entire incident that led to his suspension was in retaliation for his filing a grievance against a coworker. In spite of this claim, Mr. Moore has presented no evidence other than his own testimony to refute the events which led to his suspension.

For these reasons, we hold that the trial court properly granted NES summary judgment on Mr. Moore's failure to promote claims.

Mr. Spears' Claims

In response to Mr. Spears' prima facie discrimination case, NES has produced affidavits from Melvin Bess and Ray Clark. Mr. Bess, the Manager of the Transmission and Distribution Operations Department, interviewed Mr. Spears regarding the October 1998, December 1998, and May 1999 promotions. Mr. Bess claims he based his decision not to give Mr. Spears the promotions in question because he "did not believe Spears would [be] effective as a member of management." Mr. Bess also indicated that, from Mr. Spears' interviews for the open positions, as well as Mr. Spears' references, he did not believe Mr. Spears would be able to "effectively communicate management decisions to his subordinates in a manner which would help to gain understanding and acceptance of those decisions."

Ray Clark's affidavit indicates that, as Manager of the Transmission and Distribution Operations Department, he promoted employees from the January 1999 and May 1999 certification lists. Although he, like Melvin Bess, indicated he was aware of Mr. Spears "good" and "very good" performance ratings, he chose to promote other employees instead of Mr. Spears because he felt the other employees were better qualified for the positions. Specifically, Mr. Clark says that Mr. Spears "failed to follow NES guidelines imposed on all supervisors, which require fair evaluations of

employees," noting that Spears "insisted on giving all crewmembers 'excellent' performance evaluations." Mr. Clark also indicated that, having seen Mr. Spears supervise employees, he did not believe Mr. Spears functioned well in a supervisory capacity.

Mr. Spears has presented no evidence in response to these non-discriminatory reasons. He, like Mr. Moore, has failed to show how NES' promotion policy influenced NES' decision not to promote him on the four occasions in question. When asked why he believed he did not receive the promotions, Mr. Spears testified that management told him he wasn't a "team player," that there was an incident on his record in which his supervisors claimed he did not let them know where he was, and that his supervisors penalized him for rating the men he supervised "too high" on their performance reviews. If anything, Mr. Spears' testimony bolsters NES' reasoning for not giving him the promotions. Although Mr. Spears disputes the validity of his supervisors' claims, there is nothing in the record aside from his deposition testimony which supports his version of what happened. Given the "affirmative evidence" standard required to survive summary judgment under the ***McDonnell Douglas*** burden-shifting analysis, we have no choice but to affirm the trial court's ruling as to Mr. Spears' discrimination claims.

Mr. Bruce's Claims

The NES also presented affidavits from Melvin Bess and Ray Clark in support of its position that it did not discriminate against Mr. Bruce based upon age. Mr. Bess cites Mr. Bruce's "bad attitude" during one of the interviews he conducted as evidence of Mr. Bruce's "negative attitude toward management." Mr. Bess claims he based his promotion decisions upon his knowledge of the candidates' supervisory experience, or lack thereof, and upon the interviews and references of the candidates. Mr. Clark cited Mr. Bruce's abuse of overtime and poor safety record as some of the factors which influenced the promotion decisions.

Mr. Bruce, like the other Plaintiffs in this case, presented no evidence other than his own testimony to refute NES' proffered non-discriminatory reasons for failing to promote him. Mr. Bruce mentions that one of the candidates promoted was 52 or 53 years old, but does not indicate, in testimony or by affidavit, whether the candidate had more or less seniority than he at the time of the promotion. He alleges that NES wanted to thin out the ranks of the older NES employees, but when asked in his deposition if he had any evidence of this practice, he responded that he did not. Again, given the burden of proof required in ***McDonnell Douglas***, we must concur with the trial court's Order granting summary judgment on all Mr. Bruce's claims.

Retaliation Claims

Mr. Moore alleges in his Complaint:

> 8. That, in general, the Plaintiff was employed by the Nashville Electric Service, as Meter Service Technician, and was wrongfully harassed, discriminated against because of age, denied

equal protection under the law, denied equal rights, discriminated against by age and the seniority system, was subject to retaliation, harassment, a hostile work environment, and was denied his due process of law in regard to his employment "property rights."

The Spears/Bruce Complaint contains substantially the same language.

It is unclear from the above language if Plaintiffs' claims are for retaliation under the Tennessee Human Rights Act, or for exercising their rights to file grievances under the civil service rules. However, since the trial court granted summary judgment on all Plaintiffs' claims, we will address the Plaintiffs' general claims of retaliation, as well as the suspension incident involving Mr. Moore.

The THRA provides that it is a "discriminatory practice" to:

Retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing **under this chapter** . . .

T.C.A. § 4-21-301(1) (emphasis added). Here, Plaintiffs have not alleged retaliation based upon their exercise of any of the activities protected under the Act. Mr. Moore has alleged retaliation for filing grievances which he claims culminated in his suspension in 1998, however, the grievances he refers to arose from work-related issues such as requiring employees to obtain special driver's licenses and general job qualifications. These general grievances which are not related to discrimination cannot be the basis of a retaliation claim under the THRA.

The 1998 incident which resulted in Mr. Moore's suspension appears to have been triggered by Mr. Moore's refusal to abide by his supervisor's request that Mr. Moore and his coworkers delay their dinner break. When Mr. Moore's supervisor chastised him for not following his instructions regarding dinner, Mr. Moore brought several "counter-grievances" against the supervisor, alleging the supervisor slept on the job and babysat his grandchild on company premises. Mr. Moore testified that he handed the counter-grievances to the supervisor, who got very angry and became "[u]nglued." He alleges the supervisor threw the grievance papers at him twice, which caused Mr. Moore to suffer an "anxiety attack." Mr. Moore testified that, "I was standing there in front of him, shaking. My arm was hurting. I was holding my right arm. I did have a closed fist right here . . . but I never swung at him." Even taken in the light most favorable to Mr. Moore, we find nothing in his story which would indicate that Mr. Moore was suspended for exercising his rights under the THRA. If anything, it appears that the incident involved the exercise of Mr. Moore's rights under civil service rules.

To the extent that any of Plaintiffs' claims are based upon retaliation for the exercise of their rights under the applicable civil service rules, those claims are not properly before this court, since

they are clearly matters within the particular expertise of the Civil Service and Pension Board. *See generally Haynes*, No. 03A01-9209-CH-362, 1993 WL 104639, at *3. For these reasons, we hold Plaintiffs' retaliation claims were properly dismissed.

In sum, Plaintiffs have failed to offer any "affirmative evidence" in response to NES' articulated, non-discriminatory reasons for the adverse job actions in question. Other than unsubstantiated allegations of coverups[7], nepotism and political favoritism, Plaintiffs' only evidence of age discrimination appears to be NES' promotion policy itself, which caps seniority at 30 years, or 30 "points." Even if we assume that NES' policy is discriminatory, we find no evidence in the record that Plaintiffs would have received the promotions if they had been given points equal to their actual years of service. Plaintiffs have presented no evidence comparing their performance and seniority ratings to the employees who received the promotions in question. Nor have Plaintiffs attempted to directly rebut NES' proffered explanations as to why Plaintiffs did not get promoted. Without any evidence to support their claims, we are constrained to hold that none of the Plaintiffs has carried his burden of proof of discrimination under *McDonnell Douglas*.

Statute of Limitations

Since, as we have discussed above, Mr. Moore failed to prove discrimination in his 1995 and 1998 claims, this issue is pretermitted on appeal.

Remaining Claims

Plaintiffs have alleged that individual board members and supervisors of the NES are liable for aiding and abetting discrimination which resulted in their failure to be promoted and in Mr. Moore's suspension. Since we have held that the trial court properly granted summary judgment on these claims, these allegations are without merit.

Plaintiffs have also alleged that the certification process does not comply with the Metropolitan Nashville, Davidson County Charter. As discussed above, since Plaintiffs have not brought a claim of disparate treatment based upon the certification process, we need not reach this claim.

Finally, Plaintiffs allege that NES violated their due process rights under the Tennessee and United States Constitutions. As we understand it, Plaintiffs are alleging violations of due process rights both in connection with NES' failure to follow the Charter's provisions, as well as defendants' failure to follow proper procedure before Mr. Moore was suspended in 1998. To the extent that defendants failed to follow the Charter's provisions or failed afford Plaintiffs due process due under

---

[7]Plaintiff Bruce claims NES covered up an incident involving an alcohol-related accident by one of the individuals who received a promotion. However, other than Mr. Bruce's allegation in his deposition testimony and Mr. Spear's testimony that he had heard about the incident as "hearsay", there is no evidence in the record in any form to back up Mr. Bruce's claims.

the civil service rules, summary judgment was also properly granted. In order to pursue such claims, Plaintiffs would have been required to proceed under the Charter and the applicable civil service rules. Only after they exhausted the remedies available to them under the rules and the Charter would they be able to seek a judicial remedy.

For the foregoing reasons, we affirm the order of the trial court granting Defendants summary judgment as to all of Plaintiffs' claims. This case is remanded to the trial court for such further proceedings as necessary. Costs of this appeal are assessed to the Appellants, Plaintiffs Jerry Moore, John Bruce, and Charlie Spears.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.