IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2006 Session

## HERMAN SAWYER v. MEMPHIS EDUCATION ASSOCIATION, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-0626-1       Walter L. Evans, Chancellor**

---

**No. W2006-00437-COA-R3-CV - Filed November 14, 2006**

---

This case involves allegations of employer discrimination by an African-American male employee. He claimed that he experienced race and gender discrimination because he was treated differently than his co-workers who were African-American females and a white male. He also claimed to have been retaliated against after he filed various grievances and complaints against his employer, and he alleged outrageous conduct on the part of his employer and his supervisor, individually. The trial court dismissed the case, and for the following reasons, we affirm.

**Tenn. R. App. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Kathleen L. Caldwell, Memphis, TN, for Appellant

Samuel Morris, Timothy Taylor, Memphis, TN, for Appellees

### OPINION

### I.   FACTS & PROCEDURAL HISTORY

Herman Sawyer ("Sawyer" or "Appellant") began working for the Memphis Education Association ("MEA" or "Appellee") in 1982. MEA is a union, and it has a contract with the Memphis City Board of Education. Sawyer is employed as a UniServ Director, and he maintains and monitors the working conditions of teachers for certain Memphis schools. There are three other UniServ Directors working for MEA, and they are supervised by an Executive Director. Sawyer is an African-American male. Of the three other UniServ Directors, two are African-American females and one is a white male. The Executive Director, Ken Foster, is also a white male.

Ken Foster was hired in 1985, and initially he also held the position of UniServ Director. In 2000, he and Sawyer both applied for the position of Executive Director. Sawyer had been with MEA for three years longer than Foster, and Sawyer claims that he had "more relevant education and more experience than" Foster. Still, Foster was chosen as the new Executive Director.

MEA, which is itself a union covering teachers, also has a contract with another union that represents MEA's employees. The Memphis Education Association Staff Organization ("MEASO") is the bargaining unit for the UniServ Directors. Sawyer was the union's president for at least six years. In 2001, MEASO filed a grievance against MEA and Foster, apparently for their refusal to bargain. After Foster and MEASO came to an agreement, Sawyer did not receive a salary increase when other employees did. On July 13, 2001, Sawyer filed a grievance through MEASO against MEA regarding his salary. Sawyer later filed another grievance following a job performance evaluation in 2002 because he was given a designated time to arrive at work – between 8:00 and 8:30 a.m. – and the other UniServ Directors have no mandated work hours. Sawyer filed a fourth grievance in October of 2002 regarding the handling of his prior grievances.

On December 5, 2002, Sawyer filed a joint claim with the EEOC and the Tennessee Human Rights Commission alleging discrimination on the basis of his race and sex. He specifically alleged that he had been "denied a promotion to Executive Director, given a lesser raise increase, given adverse performance expectations, and issued set hours of work," and that his secretary was given receptionist duties whereas other UniServ Directors' secretaries were not. He claimed that this discrimination was based on his being a black male because the other UniServ Directors, being black females and a white male, were not treated the same way. On December 12, 2002, the EEOC issued a "Dismissal and Notice of Rights" statement to Sawyer. Based upon its investigation, the EEOC was unable to conclude Sawyer's allegations established any violations by the MEA. Sawyer was told that the conclusion reached from the investigation was that the Executive Director "just didn't like [Sawyer]."

On March 7, 2003, subsequent to the EEOC's dismissal, Sawyer filed a complaint in the United States District Court for the Western District of Tennessee. On December 18, 2003, an amended complaint was filed against MEA, Mr. Foster, and Lola Bolden (the MEA Board President). Sawyer alleged discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000(e), *et seq.*, as well as the Tennessee Human Rights Act, T.C.A. § 4-21-401, *et seq.* Also, he claimed intentional and negligent infliction of emotional distress by MEA through its employees. It appears that the federal lawsuit was dismissed based upon a jurisdictional defect.

On March 4, 2004, Sawyer filed a claim with the Tennessee Human Rights Commission again alleging discrimination. He stated that he was constantly receiving memorandums from Foster with condescending and even hostile tones. He claimed that he did not receive the help and resources that were provided to the other UniServ Directors. In addition, he stated that the other Directors had received substantial raises while his had been sub-par. He stated his belief that he received different treatment because he is a black male and also in retaliation for his previous claim filed with the EEOC, the federal lawsuit, his internal grievances, and a charge filed with the National

Labor Relations Board. The Commission investigated the matter and ultimately dismissed Sawyer's complaint, finding "no reasonable cause to believe that [MEA] has engaged in a discriminatory practice."

On March 30, 2005, Sawyer initiated the present action in the Chancery Court of Shelby County. Sawyer claimed that MEA had discriminated against him in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-401, *et seq.* ("the Act" or "the THRA"), and he claimed that MEA and Foster, individually, had committed the state tort of outrageous conduct. In response, MEA and Foster filed a "Motion to Dismiss, or in the alternative, for Summary Judgment." The motion stated that the court lacked subject matter jurisdiction over portions of the complaint, the statute of limitations barred the complaint, and the complaint failed to state a claim on which relief could be granted. Each party submitted memorandums in support of their positions, but they did not introduce affidavits or other evidence. On February 7, 2006, Chancellor Walter Evans entered an order granting the "Motion to Dismiss, or in the alternative, for Summary Judgment." The order did not specify the basis of the dismissal, but it did state that the court "further [found] that it lack[ed] subject matter jurisdiction over this matter." On February 17, 2006, Sawyer filed his notice of appeal to this Court.

## II. ISSUES PRESENTED

Appellant has timely filed his notice of appeal and presents the following issue for review:

1.    Whether the chancellor erred as a matter of law in ruling that the trial court lacked subject matter jurisdiction on Appellees' motion to dismiss;

Additionally, Appellees present the following issues, as we perceive them, for review:

2.    Whether the record before the chancery court supported the dismissal of Plaintiff's complaint, because
       A.    the court lacked jurisdiction over portions of the complaint,
       B.    Plaintiff's claims were barred by the statute of limitations,
       C.    the complaint fails to state a claim for discrimination on the basis of race or sex, or
       D.    the record reveals no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

MEA and Mr. Foster presented various grounds for dismissal in their motion to dismiss and for summary judgment. The parties point out that it is unclear whether the trial court dismissed the case pursuant to Rule 12.02(6) or Rule 56 of the Tennessee Rules of Civil Procedure. We believe that the court ordered the dismissal for failure to state a claim upon which relief can be granted under

Rule 12.02(6), as no evidence or affidavits were introduced. In his order, the judge stated that the decision was made "having heard the argument and briefs of the parties." However, in reviewing the chancery court's decision, we need not confirm that each of the grounds constituted a proper basis for dismissal. "In any event, if we find that the complaint fails to state a claim upon which relief can be granted, the question of whether the dismissal was pursuant to Rule 12 or Rule 56 is moot." *Smith v. First Union Nat. Bank of Tenn.*, 958 S.W.2d 113, 114 (Tenn. Ct. App. 1997).

A Rule 12.02(6) motion to dismiss for failure to state a claim tests only the sufficiency of the complaint, and not the strength of a plaintiff's proof. *Smith*, 958 S.W.2d at 114-15 (citing *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979)). The motion is determined by an examination of the complaint alone. *Id.* at 115 (citing *Wolcotts Fin. Servs., Inc. v. McReynolds*, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law because they do not constitute a cause of action. *Id.* (citations omitted). In making this determination, we construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true. *Id.* (citing *Fuerst v. Methodist Hosp. South*, 566 S.W.2d 847, 848-49 (Tenn. 1978); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976)).

## IV. DISCUSSION

### A. The Discrimination Claim

As previously discussed, Sawyer's complaint alleged that MEA had discriminated against him on the basis of race and sex in violation of the Tennessee Human Rights Act, T.C.A. §4-21-401, *et. seq.* A plaintiff may claim "disparate treatment" discrimination against an employer when individuals from a protected group are being treated differently and less favorably than other individuals. *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001). This type of claim requires a showing of intent to discriminate, but intent may be shown with indirect or circumstantial evidence. *Id.* To establish a prima facie case of discrimination, the plaintiff bears the initial burden of presenting proof that (1) he is a member of a protected class, such as a racial minority; (2) he was satisfactorily performing his job duties; (3) he was subject to an adverse employment action; and (4) that he was either replaced by a non-minority or that similarly situated non-minority employees were treated more favorably. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002).

In his complaint, Mr. Sawyer presented the following facts relevant to proving MEA's discriminatory intent. The previous two Executive Directors have been white males, and in 2000, Ken Foster, a white male, was appointed Executive Director despite the fact that Sawyer had been at MEA longer. Once Foster was promoted, he hired only black females and a white male for the other three UniServ Director positions. The black female UniServ Directors received 23% raises and the white male received a 17% raise over three years, while Sawyer's raise was approximately 8%. The other UniServ Directors have full time secretaries and Sawyer does not, and in evaluations, Sawyer was instructed to do more of his own clerical duties while a black female Director was told

to rely more on her secretary. Since Sawyer's annual evaluation in 2002, he has been required to arrive at work between 8:00 and 8:30 a.m. each day even though the other UniServ Directors have no set start time. Foster revised the school assignments to the benefit of the other three UniServ Directors because Sawyer now covers more elementary schools. Sawyer is required to keep his door open at work, and the other Directors have no such requirement. Foster goes to lunch each day with the other UniServ Directors, and Sawyer is not invited. Also, Sawyer is not asked to attend meetings that the other Directors attend, and his "special programs" are not equally funded. Finally, he stated that his personnel file still contains some items which are more than four years old, in violation of company policy.

Sawyer also contended that he receives e-mails from Foster that are "condescending, harassing, intimidating and discriminatory," but the other UniServ Directors are not treated in this manner. He complained that the MEA Vice President had written a letter to Foster accusing Sawyer of causing irregularities in the union election, and Foster wrote an accusatory letter to Sawyer without first investigating the incidents. Sawyer also stated that Foster had contacted him during two medical leaves of absence, and Sawyer considered these contacts to be inappropriate and harassing. In addition, Sawyer claimed the MEA President had stated that Sawyer made too much money and she intended to get his job.

We believe that Sawyer's allegations failed to demonstrate MEA's intent to discriminate against him on the basis of either race or sex. Specifically, for Sawyer to establish a prima facie case of discrimination, he was required to show that similarly situated *non-minority* employees were treated more favorably. ***See Osagie***, 91 S.W.3d at 329. Sawyer complained that he was treated differently from the other three UniServ Directors, one of whom is a white male and two who are African-American females. Regarding discrimination on the basis of race, his allegations actually suggest that the two female *African-Americans* are treated *favorably*. Regarding sex discrimination, Sawyer's complaint implies that the white *male* is not discriminated against. He did not establish "disparate treatment" because of race or sex, which requires that individuals from a protected group be treated differently and less-favorably than other individuals. ***See Moore***, 72 S.W.3d at 651. Sawyer's evidence shows that the similarly situated *minority* employees are treated more favorably than Sawyer. Although Sawyer may have been subject to different treatment when compared to the other UniServ Directors, his complaint did not demonstrate that it was because of his race or gender.[1] Because these facts failed to show discriminatory intent by MEA on the basis of either race or sex, Sawyer failed to state a claim for discrimination under the Tennessee Human Rights Act.

---

[1] At oral argument, Sawyer's counsel acknowledged that Sawyer had not faced discrimination on the basis of his race or sex alone. Instead, he claims he is discriminated against because of the combination of his race and sex. Sawyer's counsel stated that an "inter-sectional" class, such as "black males," has not been recognized in Tennessee, in the Sixth Circuit, or under the Tennessee Human Rights Act. She then noted that other jurisdictions have recognized this type of cross-class, and she encouraged us to do so. However, her brief presents no argument on this theory, and at oral argument, she did not point us toward any authority supporting her position. We therefore decline to recognize Sawyer's narrow status as a "black male" as being a separate protected class in discrimination cases.

The complaint's only factual allegation possibly stating a prima facie case of discrimination involved Ken Foster's promotion to Executive Director in 2000. Foster would be a "similarly situated *non-minority* employee" who was arguably treated more favorably than Sawyer. Both Sawyer and Foster had applied for the promotion in early 2000. Sawyer had worked at MEA since 1982, and Foster was hired in 1985. However, a civil cause of action under the Tennessee Human Rights Act must be filed within one year after the alleged discriminatory practice ceases. Tenn. Code Ann. § 4-21-311(d) (2005). Here, the alleged discriminatory practice (promoting Foster rather than Sawyer) occurred in 2000 and would no longer give rise to a claim under the Act when Sawyer filed his complaint in this case in 2005.[2]

In sum, we conclude that Sawyer did not state a claim upon which relief could be granted for race or gender discrimination under the Tennessee Human Rights Act.

### B. The Retaliation Claim

At oral argument, Sawyer's counsel discussed a claim for retaliation based on his "protected activity." She contended that the "protected activity" included his previous federal court case claiming discrimination and his EEOC charge, as well as his prior union grievances. In his complaint, Sawyer alleged that MEA had discriminated against him "based upon his race, sex and retaliation." Although he did not present any facts specifically demonstrating how he had been retaliated against, the complaint did state that "Sawyer has been subjected to continuing harassment and retaliation for filing complaints of discrimination." We conclude that he failed to state a claim for retaliation under the Tennessee Human Rights Act.

Regarding retaliation, the Act provides:

> It is a discriminatory practice for a person or for two (2) or more persons to: (1) Retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter . . . .

Tenn. Code Ann. § 4-21-301 (2005). In order to establish a prima facie case of retaliation under the Act, a plaintiff must demonstrate the following: (1) the plaintiff engaged in a protected activity; (2) the exercise of the plaintiff's protected civil rights was known to the defendant; (3) the defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Newsom v. Textron Aerostructures, a div. of Avco, Inc.*, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995) (citations omitted).

---

[2] Statute of limitations defenses are considered under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, 193 S.W.3d 564, 566-67 (Tenn. 2006), and it is obvious from the face of the complaint that a claim on these facts would be time-barred.

In Sawyer's complaint, he alleged that "[o]nce Foster was appointed as Executive Director, he began to harass, intimidate, discriminat[e] and use unfair labor practices against Sawyer." Sawyer described at least four union grievances he had filed against MEA since Foster was promoted. He also stated various ways in which he had been treated differently from the other UniServ Directors, but he introduced most of the allegations with the phrase "[b]eginning in 2001 and continuing today . . . ." Sawyer's first EEOC charge alleging race and sex discrimination was filed December 5, 2002.

We consider Sawyer's first EEOC charge in 2002 to have been his first "protected activity" under the Act. Sawyer did not allege a prima facie case of retaliation because he did not show that "the defendant *thereafter* took an employment action adverse to the plaintiff" or "that there was a *causal connection* between the protected activity and the adverse employment action." **Newsom**, 924 S.W.2d at 96 (emphasis added). According to Sawyer's complaint, the acts allegedly constituting race and sex discrimination began well before he participated in "protected activity" under the Act. We disagree with his argument that the filing of union grievances constituted "protected activity" under the Tennessee Human Rights Act. In *Moore*, we noted that "only certain retaliatory conduct violates the THRA." 72 S.W.3d at 653, 656 ("general grievances which are not related to discrimination cannot be the basis of a retaliation claim under the THRA.") Here, even if MEA retaliated against Sawyer for the filing of union grievances, that discrimination or retaliation would not be prohibited under the Tennessee Human Rights Act. The Act only makes it a discriminatory practice for a person to retaliate "against a person because such person has opposed a practice declared discriminatory *by this chapter* or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing *under this chapter* . . . ." Tenn. Code Ann. § 4-21-301 (2005) (emphasis added). Therefore, Sawyer's complaint did not state a claim for retaliation under the Act.

### C. The Outrageous Conduct Claim

Liability for the state tort of "outrageous conduct" exists only "where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury." **Swallows v. Western Elec. Co., Inc.**, 543 S.W.2d 581, 582-83 (Tenn. 1976) (citing *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966)). Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. **Id.** Generally, the case involves facts which would arouse the resentment of an average member of the community and leave him to exclaim, "Outrageous!" **Chandler v. Prudential Ins. Co.**, 715 S.W.2d 615, 622 (Tenn. Ct. App. 1986). The present case does not involve such extreme, outrageous conduct which would be beyond the pale of decency, and Sawyer's complaint did not state a claim for outrageous conduct upon which relief could be granted.

## V.  CONCLUSION

For the aforementioned reasons, we find that Sawyer's complaint failed to state a claim for discrimination or retaliation under the Tennessee Human Rights Act, and neither did it state a cause of action for outrageous conduct. We therefore affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Herman Sawyer, and his surety, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, JUDGE