IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 23, 2009 Session

## THERESA HAYES v. THE CITY OF LEXINGTON, TN

Direct Appeal from the Chancery Court for Henderson County
No. 19757     James F. Butler, Chancellor

No. W2008-02431-COA-R3-CV - Filed November 12, 2009

The defendant-city required applicants for its vacant firefighter position to complete a physical agility exam as part of its hiring process. The plaintiff, a female, applied for the position but was eliminated from consideration based upon her performance on the physical agility exam. She sued the city under the Tennessee Human Rights Act, claiming that the physical agility exam had a disparate impact on females. Following a one-day bench trial, the trial court ruled in favor of the city and dismissed the plaintiff's complaint. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Justin S. Gilbert, Michael L. Russell, Jackson, TN, for Appellant

John D. Burleson, Dale Conder, Jr., Jackson, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In 2005, the City of Lexington implemented a new multi-phase hiring process in order to fill a vacant entry-level firefighter position in the Lexington Fire Department. First, those who applied for the position were required to attend a mandatory orientation meeting at City Hall, at which the job description and the remainder of the hiring process were discussed. The following week, the applicants were required to complete a physical agility exam, consisting of eight different events, in less than fourteen minutes. Only those who successfully completed the physical agility exam were interviewed. A five-person hiring committee then selected three finalists for additional interviews with the fire chief. Finally, the fire chief recommended one applicant to the Board of Mayor and Aldermen for final approval.

Thirteen candidates applied for the position. Eleven participated in the physical agility exam, but only nine of them passed and proceeded to the interview stage. Theresa Hayes was the only female to apply for the position, and she was one of the two applicants who did not pass the physical agility exam. On August 19, 2005, Ms. Hayes filed a complaint in the Henderson County Chancery Court against the City of Lexington, alleging that the firefighter agility exam had a disparate impact on females. She sought relief under the Tennessee Human Rights Act.

Following a one-day bench trial, the trial court entered an order dismissing Ms. Hayes' complaint. Ms. Hayes timely filed a notice of appeal to this Court.

## II. DISCUSSION

Tennessee Code Annotated section 4-21-401(a)(1) provides that it is a "discriminatory practice" for an employer to fail or refuse to hire any person because of such individual's race, creed, color, religion, sex, age or national origin. The Tennessee Human Rights Act was designed to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended." Tenn. Code Ann. § 4-21-101(a)(1). As such, "[t]his Court has construed the Tennessee Human Rights Act under the framework of the federal statutes upon which it was patterned[.]" *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001). Under the federal anti-discrimination statutes, a plaintiff may assert claims of "disparate treatment" or "disparate impact" discrimination. *Id.* (citing 45C Am. Jur. 2d *Job Discrimination* § 2703 (1993)). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2672 (U.S. 2009). "A 'disparate impact' case is one in which a facially-neutral employment policy, such as an applicant testing procedure or height and weight requirement, has the effect of treating individuals in the protected class less favorably." *Moore*, 72 S.W.3d at 651; *see also Spann v. Abraham*, 36 S.W.3d 452, 464 (Tenn. Ct. App. 1999). No showing of discriminatory

motivation is required in a disparate impact case. *Id.* "Title VII proscribes employment practices that are 'fair in form but discriminatory in operation.'" ***Isabel v. City of Memphis***, 404 F.3d 404, 411 (6th Cir. 2005) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).

A three-part burden-shifting test applies to determine whether an unlawful disparate impact exists in any particular case. ***Isabel***, 404 F.3d at 411 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)).

> Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). An employer may defend against liability by demonstrating that the practice is "job related for the position in question and consistent with business necessity." *Ibid.* Even if the employer meets that burden, however, a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs. §§ 2000e-2(k)(1)(A)(ii) and (c).

***Ricci***, 129 S. Ct. at 2672-73.

In this case, Ms. Hayes argued that Part Four of the eight-event physical agility test had a disparate impact on females. Part Four, entitled "Ladder Removal," was described in a handout given to the applicants at the orientation meeting as follows:

> **Setting Given:** While wearing turnout coat and helmet. One 14-foot roof ladder and one 24-foot extension ladder properly mounted to an engine without safety latches in position.
> **Performance:** Starting 10' away the candidate shall approach engine and remove 14-foot roof ladder and carry towards back of engine until the tip of the ladder is past the rear of the engine and lay ladder flat on the ground. The candidate shall then remove the 24-foot ladder and lay flat on the ground, after clearing the ladder the candidate shall pick up the ladder and place back on engine in proper position. Walk back to the 14-foot roof ladder and pick it up and place back in proper position on engine.

Ms. Hayes only challenged the portion of Part Four requiring her to place the 24-foot ladder back onto the fire engine. Ms. Hayes attempted to replace the 24-foot ladder by grabbing it near the center and lifting it over her shoulders, similar to a barbell lift. She struggled with the lift and completed Part Four in 2 minutes, 19 seconds. The ten men who participated in the physical agility exam completed Part Four in times ranging from 37 seconds to 1 minute, 6 seconds. Ms. Hayes completed the entire physical agility exam in 14 minutes, 41 seconds.

In 2007, Ms. Hayes applied for another vacant firefighter position with the City of Lexington and took the physical agility test again. This time, she completed Part Four by using a different

method of replacing the ladder. She hooked one end of the ladder onto the truck first, then lifted the other end onto the other hook. Ms. Hayes passed the exam, completing all eight events in less than fourteen minutes.

Again, the three steps in a disparate impact case are (1) whether the plaintiff can establish a prima facie violation by showing that the employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin," (2) if so, whether the employer can demonstrate that the practice is "job related for the position in question and consistent with business necessity,"(3) and if so, whether the plaintiff can show that "the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." ***Ricci***, 129 S.Ct. at 2672-73 (internal quotations omitted). On appeal, Ms. Hayes argues, regarding the third issue, that allowing the ladder to be lifted one end at a time, as she did in 2007, constitutes a "very viable alternative" that "would not discriminate against women." According to Ms. Hayes, this method takes "only seconds longer" and would "accomplish the same purpose." Ms. Hayes claims that "this would have been an absolutely acceptable alternative in 2005." We conclude, based upon the preponderance of the evidence, that Ms. Hayes could have utilized this method in 2005, and she simply failed to do so. The written handout regarding the exam does not specify how the ladder should be replaced; it simply instructs the applicant to "pick up the ladder and place [it] back on [the] engine in proper position." The candidates received this description over a week prior to the exam and were given the opportunity to ask questions at the orientation meeting and on the day of the exam. However, Ms. Hayes did not ask questions on either occasion. Prior to the physical agility exam, a current firefighter demonstrated each of the eight events to the candidates, and when he came to Part Four, he lifted the 24-foot ladder in the center. However, the fire chief in 2005, Chief Darrough, testified that the candidates were not limited to performing the events in the manner demonstrated, and he said the candidates were not told that they had to use the demonstrator's methods.

According to Ms. Hayes, Chief Darrough had stated at the orientation session that the candidates should lift the ladder from the center. However, she later testified that Chief Darrough made this statement on the day of the physical agility exam, right before the candidates participated in Part Four. At trial, Chief Darrough testified that he only went over the written description of the events, and he said he did not specifically instruct the candidates on how to complete the events, beyond the written description, either at the orientation session or on the day of the physical agility exam. The current fire chief, Chief Wood, was the time-keeper during the 2005 exam, and he also testified that no one told Ms. Hayes that she could not utilize the end-to-end method in 2005 or that she could utilize it in 2007. The event was demonstrated the same way both years, and Ms. Hayes simply lifted the ladder differently in 2007 and passed.

In sum, we conclude that Ms. Hayes could have used the end-to-end method when taking the physical agility exam in 2005. Because Ms. Hayes concedes that the end-to-end method "[does] not discriminate against women," we find that the physical agility exam does not cause a disparate impact on the basis of sex.

### III.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court dismissing the complaint.  Costs of this appeal are taxed to the appellant, Theresa Hayes, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.